IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Mark R. Jungkunz, | : | Chief Judge Susan J. Dlott |
| | : | |
| Plaintiff, | : | Case No. 1:11-cv-00691 |
| | : | |
| v. | : | Order DENYING Plaintiff's Motion for |
| | : | Order Conditionally Certifying Plaintiff's |
| Schaeffer's Investment Research, Inc., | : | First Claim as a Collective Class and |
| | : | Certifying Plaintiff's Second Claim as a |
| Defendant. | : | Class Certification |

Before the Court is Plaintiff's Motion for Order Conditionally Certifying Plaintiff's First Claim as a Collective Class and Certifying Plaintiff's Second Claim as a Class Certification (hereinafter "Motion for Class Certification"). (Doc. 15). For the following reasons, Plaintiff's Motion for Class Certification is **DENIED**.

## I.      INTRODUCTION

Plaintiff Mark R. Jungkunz filed this action against his former employer, Schaeffer's Investment Research, Inc. ("SIR"), asserting a collective claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and a Fed. R. Civ. P. 23 class action claim under the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act"), Ohio Revised Code Chapter 4111.

Defendant SIR is a publisher of options trading information. During his employment with Defendant, Jungkunz worked in a group of SIR employees he refers to as the "inside sales persons." (*See* Amended Complaint ¶ 1, Doc. 4 at Page ID 18.) Junkunz claims that, during his tenure at SIR, Defendant failed to comply with state and federal overtime compensation requirements in two ways. First, Jungkunz alleges that when SIR did pay overtime, it did so at an improper rate of pay by failing and refusing "to include commissions and bonuses in the regular rate basis for overtime calculation" (hereinafter, "Rate of Overtime Violation"). (Doc. 16

1

at Page ID 59.)   As explained below, this allegation was investigated by the U.S. Department of Labor ("DOL") prior to the filing of this lawsuit.  The investigation resulted in a DOL-supervised settlement in the summer of 2011, pursuant to which SIR changed its rate calculation going forward and paid back wages to twenty-seven employees for the two-year period immediately preceding the settlement.  While recognizing that settlement, Jungkunz alleges in his Amended Complaint that SIR's conduct was willful, entitling him and the other employees affected by the improper rate calculation to a third year of backpay under the FLSA.  (*See* Amended Complaint ¶ 21–22, Doc. 4 at Page ID 22.)

The second type of wage violation that Jungkunz alleges is that SIR engaged in a "routine practice of insisting [inside sales] employees work through lunch periods and break periods without pay" (hereinafter, "Off-the-Clock Work Violation").  (*Id*.)  In defense, SIR contends that it did not at any time require employees to work though lunch or break periods without compensation.

Jungkunz filed his Complaint and notice of consent to the FLSA action on October 3, 2011.  He subsequently filed an Amended Complaint on December 2, 2011.  At the preliminary pretrial conference in this matter, held on February 7, 2012, the parties agreed to do limited discovery related to the issue of class certification.[1] Plaintiff now moves the Court for an order conditionally certifying an opt-in class "consisting of all persons who are or have been inside sales employees of Defendant at any time from three years prior to the filing of the instant Complaint [December 2, 2011], until the final disposition of this case" for a collective class action under the FLSA, 29 U.S.C. § 216(b).  (Doc. 15 at Page ID 57.)  Plaintiff also moves for

---

[1] This agreement also is expressed in the Joint Discovery Plan filed by the parties, which states at paragraph 3.A, "Discovery should be limited in some fashion or focused upon particular issues which relate initially to discovery conducted only on class/collective action issues, and merits discovery conducted after class/collective action issues have been determined by the Court."  (Doc. 10 at Page ID 47.)

class action certification of the Ohio Wage Act claim pursuant to Fed. R. Civ. P. 23(c)(1),

seeking an order "certifying Plaintiff's Second Claim for Relief as a class action consisting of all

persons who are or have been inside sales employees of Defendant at any time from three years

prior to the filing of the instant Complaint [December 2, 2011], until the final disposition of this

case." (*Id.*)

## II.    FACTUAL BACKGROUND

SIR's inside sales employees sell various services and educational materials, such as

books, newsletters, and email alert services, aimed at advising subscribers on personal

investment strategies and opportunities. (Jungkunz Dep. 6-11, Doc. 20 at Page ID 155–60.)

Jungkunz worked for SIR's inside sales department from November 14, 2005 to August 13,

2010. (*Id.* at 6, Doc. 20 at Page ID 155.) His primary duty was to call customers and market

SIR's services. (*Id.* at 7, Doc. 20 at Page ID 156.)

In exchange for his services, Jungkunz was paid an hourly wage plus commissions on

sales. (*Id.* at 12, Doc. 20 at Page ID 161.) Jungkunz's scheduled hours varied from 8:00 a.m. to

5:00 p.m. to 8:30 a.m. to 5:30 p.m. (*Id.* at 22–23, Doc. 20 at Page ID 171–72.) Defendant's

employee handbook provides that a "normal work week is Monday through Friday," and a

"normal work day is eight hours plus an additional one hour unpaid lunch break and two 15

minute paid breaks." (*Id.* at 40, Ex. 7, Doc. 20 at Page ID 189, 303.) Defendant employs at least

one timekeeping system that is tied into the telephone system. That system tracked the time

Jungkunz logged into his telephone in the morning upon arrival and the time he logged out at the

end of the day. (*Id.* at 23, Doc. 20 at Page ID 172.) However, there is no evidence that

Defendant relies on that system in any manner with respect to tracking an employee's total work

hours for payroll purposes. In fact, Plaintiff admitted that SIR did not instruct employees to log

out of their telephone system any time they were away from their desk, so that system would not have kept track of employee breaks. (*Id*. at 41, Doc. 20 at Page ID 190.) Rather, with respect to payroll recordkeeping, Defendant requires its employees to keep track of the hours they work and enter that time into a computerized database on a weekly basis. (*See id*.) Accordingly, at the end of each weekly pay period, Jungkunz manually entered the hours that he worked along with any vacation or paid leave that he may have used. (*Id*. at 24, Doc. 20 at Page ID 172–73.) Attached to Jungkunz's deposition are his weekly time sheets, beginning with the week of October 6, 2008 and ending with the week of August 2, 2010. (*Id*. Ex. 6, Doc. 20 at Page ID 208–302.)

<u>Logging Overtime Related to Lunches and Breaks (Off-the-Clock Work Violation)</u>

As indicated above, one of the ways in which SIR is alleged to have violated federal and state law is by requiring employees to work through lunches and break periods without compensation. In support of that allegation, Jungkunz testified during his deposition that that although he typically was logged into the telephone system during the full nine-hour 8:00 a.m. to 5:00 p.m. or 8:30 a.m. to 5:30 p.m. time frame for which he was scheduled to work each day and often did not take a lunch or any breaks, he only recorded eight hours per day on his time sheet because he believed the company would not pay him for the extra hour he actually worked. [2] (*Id*. at 29, 33–34, 36, 38, Doc. 20 at Page ID 178, 182–83, 185, 187.) He claimed he recorded only forty hours on his weekly time sheet despite having worked overtime because he had been told never to enter any overtime unless it had been pre-approved. (*Id*. at 29–31, Doc. 20 at Page ID 178–180.) When asked to specifically describe what he was told regarding logging overtime,

---

[2] Jungkunz testified that he worked through lunch because "that's what [he] had to do to hit the goals and numbers and make money for [him]self and the company." (*Id*. at 38–39, Doc. 20 at Page ID 187–88.) However, he never spoke with his supervisors about his concern that it would not be possible to reach the goals set by the company unless he worked more than forty hours per week. (*Id*. at 43, Doc. 20 at Page ID 192.)

Jungkunz responded that his manager, John Shields, made a "general statement to the entire department that overtime hours would not be paid unless they were approved overtime hours by him or by senior management."  (*Id*. at 31, Doc. 20 at Page ID 180.)  According to Jungkunz, "[t]he occasional Saturday that we worked, six hours would be above and beyond that 40 hours and they would pay us for that approved six hours of overtime," but "[a]nything else would not be paid."  (*Id*.)

Jungkunz further testified that other employees in his department similarly worked through lunch on a regular basis, and that his supervisors, including Shields, were aware of the situation because they could see him and the other sales consultants sitting at their stations.  (*Id*. at 37, 41, Doc. 20 at Page ID 186, 190.)  Though he claimed they saw him work through lunch, Junkunz admitted that he never told any of his managers that he was working through lunch and not reporting that time.  (*Id*. at 37–38, Doc. 20 at Page ID 186–87.)  Additionally, Jungkunz admitted that because he assumed the requests would be denied, he never actually sought approval for or attempted to report times when he claims to have worked through lunches or breaks.  (*Id*. at 34-35, Doc. 20 at Page ID 183–84.)

<u>Calculating the Rate of Overtime Pay (Rate of Overtime Violation)</u>

At some point while Jungkunz was working for SIR, the former COO of the company, Bob Rack, told Jungkunz during casual conversation that SIR's owner, Bernie Schaeffer, knew that the company was not properly calculating overtime payments and that he had sat in on a meeting in which SIR's attorney told Schaeffer that the company was "not paying people properly."  (*Id*. at 14–16, Doc. 20 at Page ID 163–65.)  Rack was no longer employed by SIR at the time he made that statement to Jungkunz.[3]  (*Id*. at 15, Doc. 20 at Page ID 164.)

---

[3] The Court includes Plaintiff's testimony about that conversation solely to show how he may have gained knowledge of the potential FLSA violation and to demonstrate what may have prompted him to subsequently

After his termination from SIR, Jungkunz contacted the DOL concerning SIR's payroll practices.  (*See id*. at 14, Doc. 20 at Page ID 163; Young Decl. ¶ 2, Doc. 17-1, Page ID 102.[4])  In March 2011, the DOL notified SIR that it had begun an investigation of SIR's practices.  The investigation included a review of SIR's payroll records for the period of March 2009 to March 2011 and focused on the question of whether SIR should have included commissions and bonuses in the regular rate of pay for the purpose of calculating overtime wages for inside sales employees.  (Young Decl. ¶¶ 2–3, Ex. 1, Doc. 17-1 at Page ID 102, 108.)  SIR had not calculated overtime wages for inside salespersons in that manner because it believed that it qualified for the FLSA exemption applicable to "retail or service establishment[s]."  (*Id*. ¶ 3, Doc. 17-1 at Page ID 102 (citing 29 U.S.C. § 207(i)).)   The DOL investigator disagreed, finding that SIR had misapplied that exemption.  (*Id*. ¶ 3, Ex. 1, Doc. 17-1 at Page ID 102, 108.)

SIR decided not to challenge the investigator's position, opting instead to change its method of computing overtime pay as requested by the DOL and to pay back wages to all affected inside sales employees who worked for SIR during the two-year period at issue pursuant to a DOL-supervised settlement.  (*Id*.)  Under the DOL's guidance, SIR conducted a self-audit to determine which employees should receive back wages based on the difference between the overtime wages they would have received if bonuses and commissions had been included in the rate calculation and the overtime wages they already received for the period March 14, 2009 to

---

contact the DOL.  To the extent that Plaintiff relies on his recollection of Rack's alleged statement to prove the truth of the matter asserted — that Schaeffer knew the company was not paying its employees properly — the statement is inadmissible hearsay.  If Rack had made that statement while still employed by SIR, it may have fallen under the hearsay exclusion rule applicable to statements of a party opponent, but the fact that Rack made the statement after having left SIR's employment brings it outside the scope of the exclusion.  *See* Fed. R. Evid. 801(d)(2)(D) (excluding from the definition of hearsay a statement "made by the party's agent or employee on a matter within the scope of that relationship and *while it existed*" (emphasis added)); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 867 (S.D. Ohio 2005).

[4] The Declaration of Cindy Young, SIR's Vice President of Finance, was submitted by Defendant in support of its opposition to Plaintiff's motion. (Doc. 17-1.)

March 12, 2011.  (*Id*. ¶ 4, Doc. 17-1 at Page ID 103.)  Ultimately, SIR concluded that a total of

$54,959.63 was due to twenty-seven employees.  (*Id*.)

On June 20, 2011, Cindy Young, SIR's Vice President of Finance, sent to Jungkunz via

certified mail a DOL Form WH-58 Receipt of Payment of Back Wages, a check made out to him

in the amount of $781.72, and a letter requesting that he "sign the Receipt for Payment and

return it in the enclosed, postage paid envelope."  (Jungkunz Dep. Ex. 1–3, Doc 20 at Page ID

203–05.)  Defendant's Exhibit 1 to Junkunz's deposition is a copy of the WH-58 Receipt for

Payment bearing Jungkunz's name.  (*Id*. at 19–20, Ex. 1, Doc. 20 at Page ID 168–69, 203.)  The

receipt indicates that the DOL calculated a gross amount of $935.61 owed to Jungkunz for the

period of March 14, 2009 through March 12, 2011.  (*Id*. at 20, Ex. 1, Doc. 20 at Page ID 169,

203.)  After the subtraction of $153.90 in legal fees, the net amount to be paid to Jungkunz was

$781.72, consistent with the amount of the accompanying check.  (*Id*.)  In addition to stating the

amount owed to Jungkunz, the receipt contains the following "NOTICE TO EMPLOYEE

UNDER THE FAIR LABOR STANDARDS ACT":

> Your acceptance of this payment of wages and other compensation due under the
> FLSA based on the findings of the Wage and Hour Division means that you have
> given up the right you have to bring suit on your own behalf for the payment of
> such unpaid minimum wages or unpaid overtime compensation for the period of
> time indicated above and an equal amount in liquidated damages, plus attorney's
> fees and court costs under Section 16(b) of the FLSA.  Generally, a 2-year statute
> of limitations applies to the recovery of back wages.  Do not sign this receipt
> unless you have actually received this payment in the amount indicated above of
> the wages and other compensation due you.

(*Id*. Ex. 1, Doc. 20 at Page ID 203.)  Beneath the notice lies a blank signature and date

line for the employee.  (*Id*.)  Though Jungkunz cashed the check sent to him with the Receipt of

Payment, he did not sign and return the Receipt of Payment.  (*Id*. at 21–22, Ex. 3–4, Doc. 20 at

Page ID 205–06; Young Decl. ¶ 7, Doc. 17-1 at Page ID 103.)

SIR sent similar notices, WH-58 Receipts of Payment, and checks to the twenty-six other current and former employees who were due back wages.  (Young Decl. ¶ 7, Doc. 17-1 at Page ID 103.)  In contrast to Jungkunz, all of those employees signed the WH-58 Receipts of Payment and returned the forms to SIR as instructed.

<u>The Potential Class</u>

On March 12, 2012, Defendant served Plaintiff with its Response to Plaintiff's First Request for Production of Documents.  (Doc. 16-1 at Page ID 79, 83.)  Among the documents Defendant turned over was a list of all SIR inside sales employees who worked at the company during the time period dating back to October 3, 2008 and continuing through the date of the disclosures.  (*See* Doc. 16-1 at Page ID 81, 84.)  The list includes each individual's last known address, telephone number, and dates of employment.  (*Id*.)  Based on discovery produced by Defendant, Plaintiff believes there are approximately forty-three individuals who were inside sales persons during the time period at issue and who potentially would be members of the proposed class.  (Doc. 16 at 7 n. 1, Page ID 65.)

III.    **ANALYSIS**

In his Amended Complaint, Jungkunz asserts two claims, one under the FLSA and one under the Ohio Wage Act.  Jungkunz seeks to certify a single collective class under the FLSA and a single Rule 23 class.  Under each claim, he alleges two different violations, described above as (1) the Rate of Overtime Violation and (2) the Off-the-Clock Work Violation, and he claims that the alleged violations affected a number of inside sales employees, warranting the conditional certification of an opt-in FLSA class and the certification of an Ohio Wage Act class under Fed. R. Civ. P. 23.  Defendant argues that class certification is not warranted under the

FLSA or Rule 23 because as to all individuals other that Jungkunz, the statute of limitations has run on the potential claims and Jungkunz has not met the applicable standards for certification.

## A.      FLSA Collective Class

### 1.      Right of Action Under the FLSA and Collective Class Certification

The FLSA requires that all hours worked must be compensated.  *See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944) ("Congress enacted the FLSA to guarantee either regular or overtime compensation for all actual work or employment."); *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002) ("The FLSA requires employers to pay at least a specified minimum wage for each hour worked, *see* 29 U.S.C. § 206.").  The FLSA also requires covered employers to pay overtime wages to employees who work more than forty hours per week unless the employees fall into the category of exempted employees.  *See* 29 U.S.C. §§ 207(a)(1) and 213; *Wood v. Mid-America Mgmt. Corp.*, 192 F. App'x 378, 379–80 (6th Cir. 2006).

The statute provides affected employees with a private right of action to recover their unpaid compensation.  29 U.S.C. § 216(b).  Similarly situated employees collectively may recover compensation from their employer under the FLSA in opt-in, class-action litigation.  29 U.S.C. § 216(b); *see also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).  An employee may become a party plaintiff in a collective class action if he consents, in a writing filed with the Court, to become a party.  *Id*.

Under the FLSA, a lawsuit to recover unpaid compensation must "be commenced within two years after the cause of action accrued," unless the plaintiff demonstrates the cause of action arose "out of a willful violation," in which case a three-year statute of limitations applies.  29

U.S.C. § 255(a). In the case of a collective action, such as Plaintiff asserts in this case, the action commences as of the date the complaint is filed only as to those individuals who are named as plaintiffs in the complaint and who file notice of consent to join the suit on the same day the complaint is filed. *Id*. at 256(a); *see also Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 675–77 (6th Cir. 2012). The action is not deemed commenced as to any other individual complainant until he or she files written consent to join the collective action. *See* 29 U.S.C. § 256; *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007); *Thompson v. Direct Gen. Consumer Prods., Inc.*, 3:12-CV-1093, 2014 WL 884494, at *7 (M.D. Tenn. Mar. 5, 2014).

"A cause of action is deemed to accrue, as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) (internal quotation marks and citations omitted). "Even if an employer continuously fails to pay overtime wages during the course of employment, each paycheck constitutes a separate violation, and claims based on any paycheck that falls outside the statutory period are barred." *Claeys v. Gandalf Ltd.*, 303 F. Supp. 2d 890, 894 (S.D. Ohio 2004); *see also Meliton v. Wepfer Marine, Inc.*, 05-2184 M1/P, 2006 WL 1745049, at *2–3 (W.D. Tenn. June 19, 2006) ("[T]he limitations period—two years (three years if the violation was willful)— began to run for each violation of the FLSA on the regular payday following the week during which the overtime was worked." (internal quotation marks omitted)); *Hasken v. City of Louisville*, 234 F.Supp.2d 688, 691 (W.D. Ky. 2002) (rejecting the plaintiffs' argument that the city's violations of FLSA were "continuing" and explaining that "because each violation of the

FLSA gives rise to a new cause of action, each failure to pay overtime begins a new statute of limitations period as to that particular event").

The FLSA does not prescribe a procedure for instituting and managing a collective action against an employer. However, courts generally employ a two-tiered certification approach for deciding whether a suit can proceed as a collective action. *Baptist Mem'l*, 699 F.3d at 877; *Comer*, 454 F.3d at 546; *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583–85 (6th Cir. 2009). First, in what is referred to as the "initial notice" or "conditional certification" stage, the Court must determine, based on the standard discussed below, whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members. *See White v. MPW Indus. Servs. Inc.*, 236 F.R.D. 363, 366 (E.D. Tenn. 2006). The first stage takes place early in the case, generally prior to the commencement or at the beginning of the discovery process.

The second stage, necessary only if an opt-in class is conditionally certified at the first stage, occurs after notice has been sent, opt-in forms have been received, and discovery has concluded. *See Comer*, 454 F.3d at 546–47; *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011). At that stage, the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiff's claims. *See id.*[5]

Junkunz's motion concerns the first of the two stages: conditional certification. The Court will authorize such certification if the plaintiff demonstrates that he is "similarly situated" to the employees he seeks to notify of the pendency of the action. Typically, given the timing of the conditional certification process, the court has minimal evidence at this stage, and the determination of whether to conditionally certify a representative class is made using a "fairly

---

[5] At the decertification stage, "district courts apply a 'stricter standard' and more closely examine 'the question of whether particular members of the class are, in fact, similarly situated.'" *Baptist Mem'l*, 699 F.3d at 877 (quoting *Comer*, 454 F.3d at 547).

lenient standard" that often though not always results in conditional certification. *Baptist Mem'l*, 699 F.3d at 877 (citing *Comer*, 454 F.3d at 547); *see also O'Brien*, 575 F.3d at 584; *O'Neal v. Emery Fed. Credit Union*, 1:13-CV-22, 2013 WL 4013167 (S.D. Ohio Aug. 6, 2013) (denying conditional certification). To meet that lenient standard, a plaintiff need only demonstrate by a "modest factual showing" that he is "similarly situated" to the employees purported to be potential class members. *MPW Indus. Servs., Inc.*, 236 F.R.D. at 367. A plaintiff can show he and the potential class members are similarly situated by showing that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. A plaintiff also may establish the similarly situated requirement by showing that he and the potential class members "suffer from a single, FLSA-violating policy" and that "proof of that policy or of conduct in conformity with that policy proves a violation to all plaintiffs." *Id.*

When, as occurred in this case, the parties are permitted to conduct some limited discovery to determine whether a class of similarly situated plaintiffs may exists, courts sometimes hold the plaintiff to a higher standard of proof. *See Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823–24 (N.D. Ohio 2011) (discussing cases). Under that standard of proof, sometimes referred to as a "modest 'plus' factual showing," the following principles apply:

- First, as is true when applying the more lenient standard, "the court's analysis is confined to evaluating whether the proposed class is 'similarly situated' and does not touch upon the merits of [the] plaintiffs' claims." *Id.* at 826.

- Second, the court "should consider the evidence produced by [the] plaintiff and [the] defendant with the explicit acknowledgment that the body of evidence is necessarily incomplete." *Id.*

- Third, the court may consider, but the plaintiff is not required to show, the factors commonly considered under stage two in performing a "similarly situated" analysis, including, "(1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the various defenses available to defendants with respect to individual plaintiffs; and (3) fairness and procedural considerations." *Id*. at 823, 826.

- Fourth, the court "resolv[es] any gaps or doubts in the evidence in favor of [the] plaintiffs based upon the incomplete, although potentially substantial, factual record in light of the equitable goals and policies embodied in the FLSA." *Id*. at 826.

The United States District Court for the Northern District of Ohio described the application of those principles as follows:

> In order to provide some measurable standard by which to judge if Plaintiffs have made a sufficient modest "plus" factual showing, and to prevent the absurd result of granting the parties time to do discovery on the conditional certification question but subsequently imposing no incremental hurdle in determining whether Plaintiffs may send opt-in notices, this Court will compare Plaintiffs' allegations set forth in their Complaint with the factual record assembled through discovery to determine whether Plaintiffs have made sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists. In other words, the Court will review whether Plaintiffs have advanced the ball down the field—showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs. And, because the Court will continue to use a lenient standard, Plaintiffs need not have moved the ball far down the field, but they need to have shown some progress as a result of the discovery as measured against the original allegations and defenses.

*Creely*, 789 F. Supp. 2d at 827 (internal citations omitted).

This Court agrees with the *Creely* Court's conclusion that a heightened standard is warranted in cases where the parties conduct limited discovery regarding the class certification question prior to the plaintiff moving for conditional certification. That standard is particularly appropriate in a case such as this where (1) Plaintiff knew the identity of all or nearly all of the

13

potential class members and had an opportunity to contact those individuals through the normal

discovery process prior to moving for conditional certification, and (2) Plaintiff chose to move

for conditional certification of an FLSA collective class simultaneously with moving for the

certification of a Rule 23 class.[6]  *See Neff v. U.S. Xpress, Inc.*, 2:10-CV-948, 2013 WL 4479078,

at *3–4 (S.D. Ohio Aug. 20, 2013) (applying the heightened discovery standard discussed in

*Creely*); *Hurt v. Commerce Energy, Inc.*, 1:12-CV-00758, 2013 WL 4427255, at *7 (N.D. Ohio

Aug. 15, 2013) (same).

### 2.    Conditional Certification of Junkunz's FLSA Claim

As discussed above, Jungkunz alleges two different FLSA violations — the Rate of

Overtime Violation and the Off-the-Clock Work Violation — each of which is based on a

separate policy or practice.  To determine whether conditional certification of a collective class is

appropriate for either alleged violation, the Court must apply the principles set forth above to

ascertain whether Jungkunz has made a modest-plus factual showing that he and potential class

members are similarly situated with respect to each of the allegedly improper practices.  For the

reasons stated below, the Court concludes that Jungkunz does not meet that burden.

### a.    Rate of Overtime Violation

With respect to this allegation, Jungkunz points to evidence demonstrating a common

practice or policy—SIR's failure to calculate the rate of overtime in a manner consistent with the

requirements of the FLSA, as documented by the DOL-supervised settlement records—that both

violated the FLSA and affected a number of employees.  However, Jungkunz has not shown that

conditional certification of a class of the employees affected by that policy is warranted in this

---

[6] The evidentiary bar a Plaintiff must meet to justify certification of a Rule 23 class is even "more stringent" than the bar a Plaintiff must meet to justify conditional certification of an FLSA class.  *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).  If a plaintiff believes he can meet the Rule 23 standard, he should have little objection to the application of a slightly heightened standard to his FLSA claim.

case because there is no evidence that any impacted individuals other than him could join or would seek to join the class as an opt-in plaintiffs. There are three main reasons leading the Court to that conclusion:

(i)     First, as discussed above, this practice was the subject of the 2011 DOL investigation and settlement. Through that process, SIR found that the practice negatively impacted twenty-seven employees during the two-year period preceding the settlement (March 14, 2009 through March 12, 2011) and made payments to those employees equaling the difference between the wages they were paid during that period and the wages they would have received had the proper rate of overtime been applied. All of the affected employees except for Jungkunz executed DOL Form WH-58 Receipts giving up their right to bring suit "for the payment of such unpaid minimum wages or unpaid overtime compensation for the [two-year period covered by the settlement] and an equal amount in liquidated damages, plus attorney's fees and court costs under Section 16(b) of the FLSA." (Jungkunz Dep. Ex. 1, Doc. 20 at Page ID 203.)

Jungkunz has offered no plausible argument, let alone any evidence, indicating a reason to question the validity or enforceability of those waivers. Nor have any of the individuals who executed those waivers indicated, via declaration or any other manner known to this Court, a desire to challenge the waivers.[7] Those waivers may not prevent the affected employees from seeking damages for a third year of potential violations to the extent the employees could prove that SIR acted willfully and that such claims would not be barred by the statute of limitations, as discussed below. *See Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1147 (9th Cir.

---

[7] Though official notice of this lawsuit has not been sent to those individuals, their identities and contact information were made available to Plaintiff during the discovery process and he has had ample time and opportunity to contact them.

2007) (holding that a plaintiff who signed a WH-58 Receipt waiving FLSA claims for the period of May 4, 2002 through October 11, 2003, waived only those claims accruing within that time period and could seek damages related to earlier violations under the three-year statute of limitations applicable to willful acts).  However, such waivers typically do operate as an effective bar to FLSA claims accruing during the time period specified in the WH-58 Receipt, and at least one court has considered such waivers in ruling on motions for conditional certification.  *See* 29 U.S.C. § 216(c);[8] *O'Neal v. Kilbourne Med. Labs., Inc.*, CIV.A. 05-50, 2007 WL 956428, at *7 (E.D. Ky. Mar. 28, 2007) (denying the plaintiff's motion for conditional certification of an FLSA class based in part on a finding that the plaintiff failed to show she was similarly situated to other employees who had signed DOL release forms related to the claims alleged by the plaintiff).[9]

(ii)    Second, there is no evidence that the pool of employees impacted by the Rate of Overtime violation is broader than the pool identified during the course of the DOL investigation.  Jungkunz does not allege or demonstrate that the audit done by SIR to determine which employees were owed back wages was in any way flawed.  Furthermore, Defendant agreed to change the rate of overtime pay going forward from the date of the settlement, and there is no indication that Defendant has fallen out of compliance with FLSA standards regarding

---

[8] The FLSA allows the DOL to investigate alleged violations and to supervise an employer's payment of back wages owed to its employees.  29 U.S.C. 216(c).  Section 216(c) provides that "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section" to bring suit against the employer for such back wages.  *Id.*; *see also Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537 (5th Cir. 1977) (discussing DOL-approved settlements); *Valencia v. Greater Omaha Packing*, 8:08CV88, 2013 WL 5347442, at *1 (D. Neb. Sept. 23, 2013) ("[U]nder the FLSA, an employee may waive FLSA rights through either of two specific methods: *where the settlement is approved and administered by the Department of Labor* or through a stipulated judgment after a court has reviewed and approved the agreement for fairness." (emphasis added)).

[9] *See also Vargas v. HEB Grocery Co., LP*, SA-12-CV-116-XR, 2012 WL 4098996, at *4 (W.D. Tex. Sept. 17, 2012) (finding that potential plaintiffs who had signed releases settling their FLSA claims in other cases had waived their potential claims and were not similarly situated to the named plaintiffs).

the calculation of the overtime rate since the settlement.  Accordingly, there is no evidence that any new claims would have accrued since the settlement or that there are any individuals other than Jungkunz and the twenty-six employees who signed the DOL waivers with claims accruing prior to the settlement.

(iii)    Finally, even if Jungkunz successfully proves that SIR acted willfully and that those affected by the practice may be entitled to damages for violations predating the two-year period coved by the settlement, the statute of limitations has long since run on such a claim with respect to all individuals other than Jungkunz.  As stated above, the typical statute of limitations applicable to FLSA claims is two years.  Based on that limitations period, the settlement guided by the DOL in this case awarded damages for the two year period immediately preceding the settlement— March 14, 2009 through March 12, 2011.

Jungkunz now claims that SIR acted willfully and that the employees affected by SIR's practices should be able to seek damages for an additional year given the three-year statute of limitations applicable to willful violations of the FLSA.  Such claims necessarily would have had to accrue *prior* to the time period covered by the settlement, and in order to commence a timely suit in relation to any claim accrued prior to the settlement period, putative plaintiffs must have filed written consent or notice to join this lawsuit no later than March 13, 2012.  In this case, Jungkunz is the only claimant named in the Complaint and the only potential class member to have filed a written consent form.  Accordingly, he is the only potential class member to have thus far "commenced" suit with regard to the violations he alleges.   Jungkunz did not move for conditional certification of a class until May 23, 2012, more than two months *after* the statute of limitations had run for any putative plaintiff to assert a claim for additional damages stemming from violations that occurred prior to the settlement period.

In sum, as to the alleged Rate of Overtime Violation, Jungkunz fails to justify the conditional certification of a class because he cannot show that there exist any putative plaintiffs who could assert a timely claim or whose claims would not be barred by the DOL-supervised settlement. *See Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 868 (S.D. Ohio 2005) ("Conditional certification is appropriate only if Plaintiff can show that other potential class members exist who are similarly situated to her."); *Creely*, 789 F. Supp. 2d at 827 (to meet the "modest plus" standard, the plaintiff must "have advanced the ball down the field—showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs").

### b.      Off-the-Clock Work Violation

Next the Court must consider whether to certify a collective class with respect to Jungkunz's allegation that SIR engaged in a routine practice of insisting inside sales employees work through lunch periods and break periods without pay.  Even by the lenient standard applicable at this stage, Jungkunz has not made a sufficient factual showing that SIR engaged in the alleged practice.  This is not a case in which lunch and other break periods were automatically deducted from an employee's time record regardless of whether the employee actually took those breaks.  Rather, SIR's inside sales people manually record the hours they work each week.  It is entirely up to them how many hours they report.  There is no evidence that Jungkunz or any other employee ever was denied overtime compensation for hours they reported working.  Jungkunz testified that one of his managers once made an announcement to the inside sales people that the company would not pay overtime unless it was preapproved.  However, a policy requiring all overtime to be preapproved does not in and of itself violate the FLSA.  There must be some evidence that the employer actually permitted employees to work without full

compensation.  *See Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008) ("An employer who has knowledge that an employee is working and who does not desire the work to be done, has a duty to make every effort to prevent its performance.").  The U.S. District Court for the Middle District of Pennsylvania recently explained that concept as follows:

> Thus, [w]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of the FLSA. Restated, an employer does not violate the FLSA when its employee performs uncompensated work but deliberately prevents the employer from discovering it.
>
> An employer, however, may not stand idly by and permit an employee to work overtime without proper compensation, even in cases where the employee does not submit a claim for overtime compensation.  And, [w]here an employer does not desire that an employee work overtime, the employer is responsible to make every effort to prevent the employee from working overtime.  This duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours.  So long as the employer knows or has reason to know that the employee continues working, those hours must be counted.  In order to prevail on an FLSA claim for unpaid overtime, an employee must prove that they were suffered or permitted to work without compensation.

*Gulick v. City of Pittston*, 3:CV-12-0141, 2014 WL 201099, at *12 (M.D. Pa. Jan. 17, 2014) (internal quotation marks and citations omitted).

While Jungkunz claims to have regularly worked during the entire time he was present in the office without taking breaks, he admits he never attempted to seek preapproval for the resultant overtime and never reported the extra hours when entering his hours into SIR's timekeeping system.  Jungkunz's own assumption that he would not be paid an appropriate wage for all of the hours he worked and his individual decision to omit those hours from his weekly timesheet does not demonstrate that SIR had a general policy or practice of requiring or even permitting all inside sales people to work through breaks without pay.  Jungkunz alleges his bosses knew or should have known he and others were working through lunch periods because

they could see the inside sales people working at their desks. However, regardless of what Jungkunz and SIR management may have observed, the key piece of missing evidence is something to suggest any other employees similarly underreported their hours based on a belief that they would not be paid for those hours. Without that evidence there is nothing to create an inference that other employees were not paid for all of the hours that they worked or that SIR knew or should have known those employees were not reporting their overtime.[10]

In this case, the evidentiary gaps are particularly glaring given that the parties engaged in at least some discovery before Jungkunz moved for conditional certification and Jungkunz knew the identities and last-known contact information of all of the putative plaintiffs. In other words, Plaintiff could have solicited affidavits from other similarly situated plaintiffs, but he failed to do so. *See Harrison*, 411 F. Supp. 2d at 870–71 (the plaintiff's submission of her own affidavit and that of a coworker alleging they worked through breaks and that managers inappropriately altered time records to reduce the total number of hours worked to avoid paying compensation was insufficient to justify conditional certification of a class, particularly given the fact that the plaintiff had access to contact information for the approximately 300 potential class members).

Defendant, in contrast, submitted declarations from nine current sales employees who maintain that they input all hours they have worked into SIR's timekeeping system and who deny ever being instructed to "work off the clock" or to work through lunches and breaks. (*See*

---

[10] In his deposition, Jungkunz states that one other inside sales person, Norm Meyer, told him that "sometimes he worked more than nine hours a day and didn't write it down because he knew that if we did, we would be disciplined, again, because it was not approved for more than 40 hours a week." (Jungkunz Dep. 42, Doc. 20 at Page ID 191.) However, that testimony contains inadmissible hearsay. Jungkunz also testified that Meyer told him that a manager stated that SIR's owner "is watching the breaks, so keep them short if you take them at all, eat lunch at your desk when you make calls." (*Id*. at 45, Doc. 20 at Page ID 194.) Again, that testimony contains inadmissible hearsay. Jungkunz did not actually hear the manager make the reported statement. Instead, Jungkunz describes Meyer's statement to him relaying what Meyer heard. That is classic hearsay. Jungkunz could have obtained an affidavit from Meyer during discovery into the class issues. He cannot, however, rely on hearsay to support his motion. *See Harrison*, 411 F. Supp. 2d at 865–68 (striking hearsay statements from affidavits submitted in support of motion for conditional certification of collective class).

Young Decl. Ex. 2, Doc. 17-1 at Page ID 110–137.)  The Court does not make credibility determinations at this stage, and it would be improper to accept Defendant's evidence over conflicting evidence from Plaintiff.  However, these declarations do serve as evidence that the alleged FLSA violations suffered by Plaintiff were not the product of a company-wide policy.  If Plaintiff had provided evidence in support of his allegations that others are similarly situated, any conflicts and reasonable inferences would have to be resolved in his favor at this preliminary stage of conditional certification.  However, Plaintiff has failed to provide support for his allegations that Defendant had pay policies that resulted in its inside sales people routinely underreporting the hours they worked.

Absent some factual showing that similarly situated employees actually do exist or that the defendant's pay practices were consistent, conditional certification is improper.  *See, e.g.*, *Arrington v. Michigan Bell Tel. Co.*, No. 10-10975, 2011 WL 3319691, at *6 (E.D. Mich. Aug. 1, 2011) (denying conditional certification motion because, although the "plaintiffs' claim of a common violation by the defendant would be sufficient to meet [the required] showing," the plaintiffs "provided no evidence of common treatment beyond the two experiences of [the named plaintiffs]" and their unsupported beliefs, set forth in signed declarations, that other low level managers were not being compensated for overtime work); *Boyd v. Alutiiq Global Solns.*, No. 11-cv-753, 2011 WL 3511085, at *6 (N.D. Ill. Aug. 8, 2011) ("Plaintiffs [did] not identify to whom they spoke, when those conversations occurred, or what specifically was discussed that would lead them to conclude that pay practices were 'consistent.'  Nor [was] there any evidence that Plaintiffs' supervisors were acting in accordance with any global plan or that those supervisors had instructed personnel at other bases to shortchange themselves on their time sheets."); *Nogueda v. Granite Masters, Inc.*, 2:09-CV-374, 2010 WL 1521296, at *3–4 (N.D.

Ind. Apr. 14, 2010) (finding that the plaintiff's evidence, consisting of his own affidavit and a sampling of pay stubs, supported his allegations that the defendant committed FLSA violations against him but did not demonstrate that the defendant committed those violations against other employees); *Villanueva-Bazaldua v. TruGreen Limited Partners*, 479 F. Supp. 2d 411, 416 (D. Del. 2007) (denying certification motion where the plaintiff submitted no evidence that other potential class members existed and the defendant submitted evidence that militated against class treatment); *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1046 (N.D. Ill. 2003) (affidavits from two out of fifty employees that they had not been paid for small amounts of overtime wages fails to amount to even a "modest factual showing" of common policy or plan).

Jungkunz may pursue his FLSA claims individually, but he has not demonstrated that he is similarly situated to other SIR employees with respect to the violations he has alleged. Accordingly, the Court will not conditionally certify a collective class action in the instant suit.

## B.    Rule 23 Class Certification

Having determined that Plaintiff failed to meet the low evidentiary bar justifying conditional certification of an FLSA class, the Court turns now to Plaintiff's request that the Court certify a class of inside sales people under Federal Rule of Civil Procedure 23 based on violations of Ohio wage and hour laws analogous to those alleged under the FLSA—again, the Rate of Overtime Violation and the Off-the-Clock Work Violation.

The Court begins this analysis mindful of the fact that courts have repeatedly characterized the rules applicable to class actions under Federal Rule of Civil Procedure 23 as even "more stringent" than those applied to collective actions under the FLSA. *See O'Brien*, 575 F.3d at 584–85.  A district court may certify a Rule 23 class only if:

> (1) the class is so numerous that joinder of all members is impracticable;[11] (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;[12] and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Certification is proper "only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) (*en banc*).  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Dukes*, 131 S. Ct. at 2551.

In addition to meeting the Rule 23(a) criteria, the proposed class must also meet at least one of the requirements listed in Rule 23(b).  *Dukes*, 131 S. Ct. at 2548; *Sprague*, 133 F.3d at 397.  Here, Plaintiffs seek class certification under Rule 23(b)(2) on the basis that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole" or under Rule 23(b)(3) on the basis that "questions of law or fact common

---

[11] While the numerosity requirement is not tied to any fixed numerical threshold, "substantial" numbers usually satisfy this requirement.  *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).

[12] The Sixth Circuit has instructed as follows regarding the meaning of the typicality prerequisite:

> "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed. 1992) (footnote omitted)).

to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(2), (3).  Plaintiff has the burden of proving that the class certification prerequisites are met, *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996), and Jungkunz, as class representative, is required to establish that he possesses the same interests and suffered the same injury as the class members he seeks to represent.  *Dukes*, 131 S. Ct. at 2550.

Below, the Court applies the Rule 23 analysis separately to the alleged Rate of Overtime Violation and the Off-the-Clock Work Violation, to determine whether the certification of a class is appropriate as to either basis for Plaintiff's claim.

### 1.        Off-the-Clock Work Violation

The Court begins with the question of whether Jungkunz has met the Rule 23 prerequisites with respect to his allegation that he and other sales employees were required or permitted to work through breaks and lunches without pay, as this question is more easily disposable than the question of whether a class related to the Rate of Overtime violation should be certified.

As explored in detail in the Court's FLSA conditional certification analysis, Jungkunz has set forth no evidence suggesting any other inside sales person similarly underreported their hours or that SIR had a policy or practice of encouraging such underreporting or refusing to compensate employees for time actually worked.  The lack of evidence also prevents Jungkunz from satisfying the Rule 23(a) requirements, particularly commonality and typicality.  In order to justify the certification of a Rule 23 class, the plaintiff should be able to demonstrate the members of the class "have suffered the same injury," which Jungkunz has not done in this case.

*Dukes*, 131 S. Ct. at 2551.  Jungkunz alleges that he has been denied wages for some of the hours that he worked, but his testimony that he took it upon himself to underreport his hours based on his assumption that the company would not pay him for any time he worked in excess of forty hours does not prove the existence of a class of individuals who suffered the same injury he alleges.  *See id*. at 2553 (describing the gap between similar allegations of personal injury versus class-wide injury).  Without more proof of a common policy or practice affecting other employees in a manner similar to Jungkunz, he cannot show that his individual claim and the purported class claim will share common questions of law or fact or that his claim will be typical of the class claims.  *See id*. (requiring "significant proof" that the defendant "operated under a general policy of discrimination"); *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 522–23 (C.D. Cal. 2011) (the plaintiffs failed to demonstrate commonality on their off-the-clock working claims when evidence did not demonstrate their off-the-clock work was pursuant to any common policy or practice of the defendant); *Gonzalez v. Millard Mall Services, Inc.*, 281 F.R.D. 455, 463–64 (S.D. Cal. 2012) (commonality prerequisite for class certification not met due to individualized and conflicting evidence with regard to missed meal and rest period claim).

### 2.    Rate of Overtime Violation

The Court lastly considers whether Jungkunz has demonstrated the appropriateness of certifying a Rule 23 class on the basis of the Rate of Overtime Violation.  As noted above, with regard to this alleged violation there is evidence of a common practice—specifically, SIR's failure to consider commissions and bonuses when calculating overtime—that affected twenty-seven employees during the time period in question in this suit.  Defendant argues that "[n]o plaintiff class exists under Ohio law eligible to assert this alleged claim due to (1) SIR's changed practice as of March 13, 2011; (2) the Ohio two-year statute of limitations; and (3) the waivers

signed by the inside-sales employees pursuant to the DOL-supervised investigation." (Doc. 17 at Page ID 96.)  However, Defendant does not elaborate on that argument or explain its position that the WH-58 Receipts, which explicitly refer only to claims under the FLSA, also constitute waivers of claims under Ohio law.  Nonetheless, the Court does not believe Plaintiff has satisfied his burden to justify certifying a Rule 23 class on the basis of the Rate of Overtime Violation.

First, the evidence demonstrates a potential class of at most twenty-seven employees. Under the circumstances of this case, the Court does not believe that class to be so numerous as to result in distinct hardship or inconvenience to potential plaintiffs if joinder is required. Additionally, while the WH-58 Receipts may not constitute actual waivers of potential state law claims, the fact that the affected employees have accepted back wages related to the same alleged injury as they would be asserting under such state law claims raises doubt as to whether they would be entitled to any additional damages.  In any case, while recognizing that Jungkunz comes closer to meeting his burden with regard to a potential Rate of Overtime class, the Court does not believe that at this time Jungkunz has adequately supported his motion for class certification.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Class Certification (Doc. 15) is DENIED.

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court